[No. B217708. Second Dist., Div. Eight. Jan. 31, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
HUMBERTO MIRANDA, Defendant and Appellant.

COUNSEL

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RUBIN, Acting P. J.**—Defendant Humberto Miranda appeals from the judgment of conviction of attempted murder, second degree robbery, possession of a firearm by a felon and assault with a firearm. He contends principally (1) there was insufficient evidence to support the conviction on all of the substantive charges, as well as the gang enhancement, and (2) the trial court incorrectly calculated the sentence on the attempted murder conviction under the "Three Strikes" law.[1] We affirm.

## PROCEDURAL BACKGROUND

Defendant was jointly charged with Steven Garcia and George Hernandez with the attempted premeditated murder (count 1) and second degree robbery (count 2) of Rustam K. Defendant alone was charged with being a felon in possession of a firearm (count 4).[2] The following Penal Code enhancements were also alleged against defendant as to each count:[3]

—Section 186.22, subdivision (b)(1)(C)—felony committed for the benefit of a criminal street gang;

—Section 12022.53, subdivision (b)—personal use of a firearm;

---

[1] Defendant also contends the trial court improperly used two sustained Welfare and Institutions Code section 602 petitions as prior strikes under the Three Strikes law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Defendant acknowledges that the California Supreme Court rejected a similar contention in *People v. Nguyen* (2009) 46 Cal.4th 1007 [95 Cal.Rptr.3d 615, 209 P.3d 946], and that we are obliged to follow *Nguyen* under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], but raises the issue to preserve it for federal court review.

[2] The other counts in the six-count information did not involve defendant.

[3] All future undesignated statutory references are to the Penal Code. For clarity, we delete the words "subdivision" and "subd." in citing the Penal Code sentencing statutes.

—Section 12022.53, subdivision (c)—personal and intentional discharge of a firearm;

—Section 12022.53, subdivision (d)—personal and intentional discharge of a firearm causing great bodily injury;

—Sections 12022.53, subdivision (e), 186.22, subdivision (b)—principal use/discharge/discharge with great bodily injury of a firearm;

—Section 667.5, subdivision (b)—prior prison terms.

It was also alleged that defendant's prior convictions subjected defendant to sentencing under the Three Strikes law.

After the evidentiary portion of defendant's separate trial, the information was amended to add an assault with a firearm charge (count 7) with enhancements pursuant to section 186.22, subdivision (b)(1) (gang enhancement) and section 12022.5, subdivision (a) (personal use of a firearm).[4]

A jury convicted defendant of each substantive offense and as to each crime found true the section 186.22, subdivision (b) enhancement. As to the attempted murder and robbery convictions, the jury found true the *principal* use, discharge and discharge with great bodily injury armed enhancements (§ 12022.53, subd. (e)(1)); but found "not true" the several *personal* firearm enhancements (§ 12022.53, subds. (b), (c), (d)). As to the assault with a firearm charge, the jury found "not true" the section 12022.5, subdivision (a) personal firearm use enhancement. In a bifurcated proceeding, the trial court found true two Three Strikes priors and two section 667.5, subdivision (b) prior prison terms. It denied defendant's motions for a new trial and to strike the priors, and sentenced him to 59 years to life in prison. He filed a timely notice of appeal.

## FACTS

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 [75 Cal.Rptr.3d 289, 181 P.3d 105]), the evidence

---

[4] The personal use enhancement attached to count seven, assault with a firearm (§ 245, subd. (a)(2)), was alleged pursuant to section 12022.5 because the substantive crime is not an enumerated offense under section 12022.53. (See § 12022.53, subd. (a).)

established that in the late night, early morning hours on July 26, 2006, Rustam K. was smoking marijuana while lounging in his parked SUV at a Mobil gas station in Sylmar where his friend worked. Four male Hispanics, later identified as defendant, Steven Garcia, George Hernandez and "Francisco," pulled up in a Ford Escort and parked nearby. While Garcia went into the station's convenience store to buy beer, Hernandez and "Francisco" approached the open driver's side door of Rustam's SUV while defendant stood in front of the SUV. Hernandez asked Rustam where he was from, which Rustam understood to mean which gang was he from. Rustam responded, "Nowhere." Hernandez identified himself as being from "San Fer," which Rustam understood as the San Fernando gang. (It was undisputed that defendant and Garcia were members of the San Fer gang. Hernandez apparently was an associate of that gang.) When Rustam declined Hernandez's request that he "share" the marijuana he was smoking, Hernandez pulled the chain off Rustam's neck. As Rustam chased after Hernandez, Rustam heard gun shots. Turning in the direction from which the shots were coming, Rustam saw defendant firing a handgun at him; Rustam was shot twice.

Officers on patrol nearby heard the gun shots, saw Rustam in a blood-stained T-shirt staggering around the Mobil station, and saw the Escort drive out of the gas station at high speed. Suspecting the occupants of the Escort may have been involved in a shooting, the officers pursued the vehicle. During the ensuing high-speed chase, the officers could make out four people in the Escort, but could not tell who was sitting where. During the chase, the officers saw items being tossed out of the back windows of the vehicle but could not discern what those objects were. The police later recovered pieces of a broken shotgun and live ammunition along the pursuit route. The chase ended about three miles from where it began when the Escort crashed into a lightpole and a chain-link fence. Because the driver's side was blocked by the fence, all four occupants of the Escort emerged from the passenger side front and back doors, but the officers could not identify who came through which door. Defendant was apprehended as he was running away from the car. Garcia and Hernandez were arrested several hours later after they were found hiding nearby. "Francisco" was never caught.

Defendant testified to a different version of events at the Mobil station. He maintained he was standing behind "Francisco" and Hernandez when Hernandez was asking Rustam for the marijuana. Defendant did not hear Hernandez announce the San Fer gang name before he grabbed at Rustam. Defendant did not know that there were any firearms in the car that night and although he heard gunshots he did not know who was shooting. (Defendant later learned that "Francisco" was the shooter.) After hearing the gunshots, defendant ran back to the Escort and jumped into the front passenger seat. "Francisco" jumped into the driver's seat, and Garcia and Hernandez jumped into the back seat. "Francisco" was driving during the police pursuit, during

which Garcia and Hernandez were throwing things out the back windows. Defendant did not know what they were throwing and never saw a shotgun in the car that night.

## DISCUSSION

A. *Substantial Evidence Supported the Convictions of the Substantive Crimes*

Defendant contends the evidence was insufficient to support the convictions of attempted murder, robbery, assault with a firearm and felon in possession of a firearm. The linchpin of each argument is that, because the jury found "not true" all of the personal gun-use enhancement allegations, it necessarily found defendant guilty of the attempted murder, robbery and assault with a firearm charges only as an aider and abettor, and must have found that defendant only constructively possessed the firearm for the felon in possession charge. Stated in the converse, the jury must have found defendant was not the direct perpetrator of any of the crimes. He then argues the evidence was insufficient that he acted as an aider and abettor or that he constructively possessed the firearm. Defendant's argument does not persuade us for two reasons. First, under the inconsistent verdict doctrine, the "not true" finding on the personal use enhancements does not inexorably lead to a finding that defendant was not the direct perpetrator of the substantive offenses. Second, even if the jury convicted defendant of the substantive offenses on a vicarious liability theory, substantial evidence supported that theory as well.

1. *Inconsistent Verdicts Do Not Require Reversal If the Convictions Are Supported by Substantial Evidence*

In part, section 954 provides: "An acquittal of one or more counts shall not be deemed an acquittal of any other count." It is well established that, under section 954, inconsistent verdicts are allowed to stand if the verdicts are otherwise supported by substantial evidence. (*People v. Lewis* (2001) 25 Cal.4th 610, 656 [106 Cal.Rptr.2d 629, 22 P.3d 392].) "[A]ny verdict of guilty that is sufficiently certain is a valid verdict even though the jury's action in returning it was, in a legal sense, inconsistent with its action in returning another verdict of acquittal or guilt of a different offense." (6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Judgment, § 75, p. 110.) The rule applies equally to inconsistent enhancement findings (*Lewis, supra,* at p. 656), and to an enhancement finding that is inconsistent with the verdict on a substantive offense (*People v. York* (1992) 11 Cal.App.4th 1506, 1510 [15 Cal.Rptr.2d 66]). In *Lewis,* the court explained, " 'Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty

beyond a reasonable doubt. [Citations.] This review should be independent of the jury's determination that evidence on another count was insufficient.' [Citation.]" (*Lewis, supra,* at p. 656.) "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict. [Citations.]" (*Ibid.*)

*People v. Federico* (1981) 127 Cal.App.3d 20 [179 Cal.Rptr. 315], is instructive. In that case, the defendant and another man were jointly charged with murder and robbery; enhancements alleged that both men were armed with and used a firearm during the commission of both crimes (§§ 12022, subd. (a), 12022.5) and that both intentionally inflicted great bodily injury upon the victim in the commission of the robbery (§ 12022.7). It was separately alleged that the defendant used a dangerous and deadly weapon, a baseball bat, in the commission of the robbery (§ 12022, subd. (b)). Following a separate trial, the defendant was convicted of first degree murder and robbery, but the jury found all of the enhancements "not true." (*Federico,* at p. 24.) On appeal, the defendant contended that his murder conviction should be reversed because it was fatally inconsistent with the jury's "not true" finding on the allegation that he was armed with a firearm during the commission of the murder, inasmuch as it was undisputed that the murder victim died from gunshot wounds. (*Id.* at p. 31.) Acknowledging that "the jury's finding that defendant was not armed in the commission of the murder was logically inconsistent with its verdict that he was guilty of the murder," the court concluded that this did not constitute a ground for reversal of the murder conviction. (*Ibid.*) It reasoned that the principles found in section 954 "are applicable in resolving the logical inconsistency between the not true finding of the armed allegation and the guilty verdict on the murder charge. . . . ' " '[W]e find more persuasive cases recognizing that such inconsistent verdicts may be caused not by the confusion but the mercy of the jury, of which the appellant can neither complain nor gain further advantage.' " ' " (*Federico,* at pp. 32–33.)

### 2. Substantial Evidence Supported Defendant's Convictions of the Substantive Crimes

At trial, Rustam identified defendant as the shooter. There was conflicting evidence, including Rustam's inability to identify defendant from photographs and at the preliminary hearing, as well as defendant's trial testimony that "Francisco" was the shooter. For example, Rustam acknowledged that he did not identify defendant from photographs shown to him by the police the day after the shooting. He also admitted that, at the preliminary hearing, he initially testified that he did not see who shot him. But during a break in his preliminary hearing testimony, Rustam told the investigating officer that he recognized defendant as the shooter. Rustam was thereafter recalled to the

stand and identified defendant as the shooter. At trial, Rustam explained that at the hospital his father discouraged him from identifying anyone and he had been afraid for his safety if he identified defendant; Rustam was still afraid at the time of trial.

■　Notwithstanding the conflicting evidence, the jury was entitled to credit Rustam's trial testimony and reject defendant's testimony and other evidence. Rustam's testimony constitutes substantial evidence that defendant was the direct perpetrator of the attempted premeditated murder, robbery, assault with a firearm and possession of a firearm by a felon. (Evid. Code, § 411; see *People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1508 [52 Cal.Rptr.3d 598] [testimony of one witness sufficient].) Under section 954, the jury's "not true" finding on the personal firearm use enhancements may be logically inconsistent with a finding that defendant was the direct perpetrator of the charged offenses, but, by statute, the inconsistency is not grounds for reversal because substantial evidence supported the verdict.

3.　*There Was Also Substantial Evidence That Defendant Aided and Abetted the Attempted Murder, Robbery and Assault with a Firearm and Was in Constructive Possession of a Firearm*

Even if we were to assume that the jury found defendant guilty of attempted murder, robbery and assault with a firearm only as an aider and abettor, and the felon in possession charge only because he constructively possessed the firearm, substantial evidence supported those theories as well.

a.　*Aider-abettor Liability*

■　Aider-abettor liability exists when a person who does not directly commit a crime assists the direct perpetrator by aid or encouragement, with knowledge of the perpetrator's criminal intent and with the intent to help him carry out the offense. (*People v. Beeman* (1984) 35 Cal.3d 547, 560–561 [199 Cal.Rptr. 60, 674 P.2d 1318].) "[W]hile mere presence at the scene of an offense is not sufficient in itself to sustain a conviction, it is a circumstance which will tend to support a finding that an accused was a principal. [Citations.]" (*People v. Laster* (1971) 18 Cal.App.3d 381, 388 [96 Cal.Rptr. 108].) " '[C]ompanionship, and conduct before and after the offense' " are also relevant to determining whether a defendant aided and abetted a crime. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [30 Cal.Rptr.2d 525]; *People v. Chagolla* (1983) 144 Cal.App.3d 422, 429 [193 Cal.Rptr. 711].)

■　Under the natural and probable consequences doctrine, an aider and abettor is guilty of not only the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the actual

perpetrator. The defendant's knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. (*People v. Prettyman* (1996) 14 Cal.4th 248, 261 [58 Cal.Rptr.2d 827, 926 P.2d 1013].) The elements of aider and abettor liability under this theory are: the defendant acted with (1) knowledge of the unlawful purpose of the perpetrator, and (2) the intent or purpose of committing, encouraging, or facilitating the commission of a predicate or target offense; (3) the defendant by act or advice aided, promoted, encouraged or instigated the commission of the target crime; (4) the defendant's confederate committed an offense other than the target crime; and (5) the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted. (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161 [31 Cal.Rptr.3d 643] (*Vasco*).) An aider and abettor may also be convicted of a nontarget crime that is lesser than the nontarget crime committed by the actual perpetrator. (*People v. Hart* (2009) 176 Cal.App.4th 662, 670–671 [97 Cal.Rptr.3d 827].)

■ "The issue 'is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable.' [Citation.]" (*Vasco, supra*, 131 Cal.App.4th at p. 161.) Resolution of the issue "depends upon whether, under all of the circumstances presented, a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted by the defendant. [Citations.]" (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531 [26 Cal.Rptr.2d 323].) ■ Crimes involving gun use have frequently been found to be a natural and probable consequence of robbery. (See, e.g., *People v. Bradley* (2003) 111 Cal.App.4th 765 [4 Cal.Rptr.3d 166] [attempted murder was a natural and probable consequence of armed robbery]; *People v. Hammond* (1986) 181 Cal.App.3d 463 [226 Cal.Rptr. 475] [same]; *Nguyen*, at p. 518 [assault with a deadly weapon is a natural and probable consequence of armed robbery].)

Under the applicable substantial evidence standard of review, we view the evidence in the light most favorable to the judgment, and will affirm if there is reasonable and credible evidence from which the jury could have relied in reaching its verdict. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 [63 Cal.Rptr.3d 82, 162 P.3d 596].)

When the crime occurred in July 2006, defendant was 23 years old and on parole from a prison sentence following a conviction for possession of a

firearm. He testified that he joined the San Fer gang when he was 16 years old but had been inactive since his recent parole. Defendant admitted that, although he knew that associating with gang members was a violation of his parole, on the night in question he was with Garcia and Hernandez, both of whom he knew to be members or affiliates of the San Fer gang. And although he also knew that smoking marijuana was a violation of his parole, defendant admitted that he accompanied Hernandez on his stated mission to get some marijuana from Rustam because defendant wanted to smoke the marijuana. Defendant testified that he was standing behind "Francisco" and Hernandez when Hernandez asked Rustam, " 'Where you from?' " and Rustam responded, " 'Nowhere.' " Defendant testified, *"We* asked him for some weed. He hit him up. [Rustam] said, I don't have none. Fuck off." (Italics added.) Hernandez responded by either punching or grabbing Rustam, or possibly taking the marijuana. Rustam "came out swinging at him." After Rustam and Hernandez traded a few punches, defendant heard gunshots and ran back to the Escort.

A police expert on the San Fer gang testified that gang members commit crimes together to intimidate the victims with a greater show of force. If gang members are together and one of them commits a crime of opportunity, the others know they must back up the perpetrator or be punished by the gang for failing to do so. Having a firearm increases a member's status in the gang. If a gang member has a gun, he is likely to use it because if he does not, he will be viewed by the gang as a coward.

This evidence was more than sufficient to support a finding that, even if he was not the direct perpetrator, defendant aided and abetted the robbery either as a backup or lookout. It was undisputed that defendant was with the men *he* claimed were the direct perpetrators of the robbery (Hernandez) and shooting ("Francisco") before, during and after the crimes were committed. Defendant knew Hernandez was affiliated with the gang. Defendant admitted that he got out of the Escort to join Hernandez in trying to get some marijuana from Rustam. From this evidence, the jury could reasonably infer that defendant intended to facilitate the gang's plan to rob Rustam of his marijuana—either by intimidating Rustam into "voluntarily" handing over the marijuana or by backing up Hernandez in forcefully taking the marijuana from Rustam if Rustam declined to "share."

Under the circumstances, the jury could also reasonably conclude that attempted murder and assault with a firearm were the natural and probable consequences of this type of robbery. The jury could have reasonably discredited defendant's claim that he did not know there was a handgun and a shotgun in the car and instead could have concluded that defendant both

knew there were firearms in the car and knew that one of his fellow gang members would likely use one of those firearms in the commission of the robbery.

### b. Constructive Possession of a Firearm

Defendant contends that, as to the felon in possession of a firearm charge, the jury must have convicted him of either constructively possessing the handgun, or personally or constructively possessing the shotgun inasmuch as it found "not true" the section 12022.5, subdivision (a) personal handgun-use enhancement on the assault with a firearm charge. He argues insufficiency of the evidence as to either theory. We disagree.

The act proscribed by section 12021 is possession of a firearm by a convicted felon. (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 130 [97 Cal.Rptr.2d 1].) Possession may be physical or constructive, and more than one person may possess the same contraband. (*People v. Williams* (2009) 170 Cal.App.4th 587, 625 [88 Cal.Rptr.3d 401] (*Williams*) [drugs and weapons found in room used by defendant, in house owned by someone else].) Possession may be imputed when the contraband is found in a place which is immediately accessible to the joint dominion and control of the accused and another. (*People v. Newman* (1971) 5 Cal.3d 48, 53 [95 Cal.Rptr. 12, 484 P.2d 1356], disapproved on another point in *People v. Daniels* (1975) 14 Cal.3d 857, 862 [122 Cal.Rptr. 872, 537 P.2d 1232].) In *People v. Nieto* (1966) 247 Cal.App.2d 364 [55 Cal.Rptr. 546], a firearm was found under the central part of the front seat of the car which the defendant was driving. Notwithstanding the passenger's testimony that the gun was his and the defendant's testimony that he did not know about the gun, the court found the presence of the gun under the front seat, together with the defendant's admission that he lied when police asked for the passenger's name, constituted substantial circumstantial evidence that the defendant was in possession of the gun. (*Id.* at pp. 366–367.)

Here, there is no dispute that defendant was in the Escort during the police pursuit. That the shotgun was also in the Escort can be inferred from the evidence that a police officer saw unidentifiable objects being thrown out of the back windows of the Escort during the pursuit and later, along the pursuit route, pieces of a shotgun were found; the condition of these pieces was consistent with having been thrown from a moving vehicle. Since there was no testimony that the shotgun was used in the commission of the crimes, it stands to reason that the shotgun was in the Escort before the attack at the gas

station and the jury reasonably could have inferred defendant and the others were aware of its presence. This, after all, was a shotgun not a handgun. The jury also was free to disbelieve defendant's testimony that he was unaware of the shotgun. Sufficient circumstantial evidence exists from which the jury could infer that defendant had at least joint dominion and control over the shotgun before it was tossed out of the car window.

## B. *Substantial Evidence Supported the Gang Enhancement*

Defendant contends insufficient evidence supports the true findings on the section 186.22, subdivision (b)(1) criminal street gang enhancement and, accordingly, the section 12022.53, subdivision (e) principal armed enhancements based on the street gang finding. As we understand his argument, it is that no reasonable trier of fact could find that the robbery and shooting were anything other than spontaneous crimes of opportunity unaccompanied by any intent to benefit the gang. We disagree.

Section 186.22, subdivision (b)(1) provides a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." The gun-use enhancements provided for in section 12022.53, subdivision (e) apply to any person who is a principal in the commission of an offense (even if not the person using or discharging the weapon) only if it is pled and proved that the "person violated subdivision (b) of Section 186.22" (§ 12022.53, subd. (e)(1)(A)) and that a principal in the crime personally used the weapon (§ 12022.53, subd. (e)(1)(B)). There is no question that a principal used and discharged a weapon in the commission of these crimes. But only if the street gang enhancement is proved can the personal use/discharge enhancements be chargeable to defendant as a principal. Thus, our analysis turns to the sufficiency of the gang evidence.

"To establish a gang enhancement allegation, 'the prosecution must prove that the crime for which the defendant was convicted had been "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." ' [Citation.]" (*Williams, supra,* 170 Cal.App.4th at p. 625; see also *People v. Margarejo* (2008) 162 Cal.App.4th 102, 108 [75 Cal.Rptr.3d 465].) There is rarely direct evidence that a crime was committed for the benefit of a gang. For this reason, "we routinely draw inferences about intent from the predictable results of action. We cannot

look into people's minds directly to see their purposes. We can discover mental state only from how people act and what they say." (*Margarejo*, at p. 110.) "Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime." (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322 [51 Cal.Rptr.3d 678]; see also *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [5 Cal.Rptr.3d 615] ["very fact that defendant committed the charged crimes in association with fellow gang members" supports the enhancement].)

Defendant, Hernandez and Garcia were indisputably members or associates of the San Fer gang. A gang expert, who had investigated San Fer for five and a half years, and who had known defendant since 2001, described defendant and Garcia as "hard core" gang members. The expert did not know Hernandez personally, but was of the opinion that Hernandez was a member of the San Fer gang based on information that Hernandez admitted as much to Detective Gilbert. The gang expert testified that the San Fer gang claims as its territory the City of San Fernando, the Sylmar area, most of Mission Hills as well as parts of Arleta, Santa Maria and the Antelope Valley; the shooting occurred in an area of Sylmar claimed by the San Fer gang.

According to the expert, the primary activities of the San Fer gang are murders, attempted murders, driveby shootings, violent assaults, narcotics trafficking, weapons violations and vandalism. He explained that gang members gain status in the gang by committing crimes for the gang; the more violent the crime, the more respect the perpetrator gains in the gang. In addition, a violent crime committed by gang members enhances the gang's general reputation in the community for violence; the gang uses its reputation for violence to intimidate rival gangs and ordinary citizens. In particular, the gang uses its violent reputation to inhibit witnesses to crimes committed by gang members from testifying against the perpetrators. The expert testified that when a gang member asks someone where he or she is from, it is a prelude to a confrontation (either verbal or violent) even if the person responds that he is not from a gang. When a gang member announces his gang affiliation during commission of a crime, the entire gang is benefited by an enhanced reputation. The expert conceded that not all crimes committed by gang members are committed for the benefit of the gang. He opined that in a hypothetical with facts similar to the evidence adduced at trial, each of the crimes was committed for the benefit of the gang: the gun was possessed to back the gang in the commission of crimes and to enhance the status in the gang of the person with the gun; the robbery and the shooting

were committed to instill fear in the community. This was sufficient evidence to support the gang enhancement.

Defendant's reliance on cases in which the evidence was found insufficient to support a gang enhancement is not persuasive. Each of those cases differs significantly from the present one. For example, in *In re Frank S.* (2006) 141 Cal.App.4th 1192 [46 Cal.Rptr.3d 839], there was insufficient evidence to support a gang enhancement on a finding that the minor carried a concealed dirk or dagger where the prosecution "did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense." (*Id.* at p. 1199.) Here, by contrast, there was evidence that defendant was with other San Fer gang members in territory claimed by the San Fer gang; the jury could reasonably believe defendant knew there were firearms in the car and had every reason to believe one of those weapons would be used to force Rustam to part with his marijuana.

In *People v. Ramon* (2009) 175 Cal.App.4th 843, 846 [96 Cal.Rptr.3d 459], the defendant was convicted of, among other things, receiving a stolen vehicle and possession of a firearm by a felon. The court found the evidence that the perpetrators were gang members and the crime was committed in the gang's territory was insufficient to support the gang enhancement. (*Id.* at p. 852.) The court noted that its analysis might be different if the expert's opinion had included "possessing stolen vehicles" as one of the gang's activities. (*Id.* at p. 853.) Here, the expert testified that narcotics trafficking, attempted murders, violent assaults, and weapons violations were among the San Fer gang's activities. Narcotics trafficking was reasonably related to stealing marijuana.

In *People v. Ochoa* (2009) 179 Cal.App.4th 650 [102 Cal.Rptr.3d 108], the defendant "did not call out a gang name, display gang signs, wear gang clothing, or engage in gang graffiti while committing the instant offenses. There was no evidence of bragging or graffiti to take credit for the crimes. There was no testimony that the victim saw any of defendant's tattoos. There was no evidence the crimes were committed in [the defendant's gang's] territory or the territory of any of its rivals. There was no evidence that the victim of the crimes was a gang member . . . . Defendant was not accompanied by a fellow gang member." (*Id.* at p. 662, fn. omitted.) Here, by contrast, there was evidence that defendant was accompanied by fellow gang members, the crime was committed in the gang's territory, and the gang's name was called out.

C. *The Trial Court Correctly Sentenced Defendant*

Defendant contends the trial court incorrectly calculated the sentence on count 1 (attempted murder) as 59 years to life.[5] He argues that the trial court incorrectly used section 667, subdivision (e)(2)(A)(iii) to calculate the minimum indeterminate term, when it should have sentenced under section 667, subdivision (e)(2)(A)(ii). We disagree.

Under the Three Strikes law, if a defendant has two or more prior qualifying felony convictions, the term for the current felony conviction "shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of" (§ 667, subd. (e)(2)(A)):

*Option 1*: Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions. (§ 667, subd. (e)(2)(A)(i).)

*Option 2*: Imprisonment in the state prison for 25 years. (§ 667, subd. (e)(2)(A)(ii).)

*Option 3*: The term determined by the court pursuant to section 1170 for the underlying conviction, including any enhancement applicable under chapter 4.5 (commencing with § 1170) of title 7 of part 2 (a determinate sentence for a specific number of years), or any period prescribed by section 190 (punishment for various degrees of murder) or section 3046 (person imprisoned for life must serve at least seven years before parole). (§ 667, subd. (e)(2)(A)(iii).)

In *People v. Williams* (2004) 34 Cal.4th 397, 403 [19 Cal.Rptr.3d 619, 98 P.3d 876], our Supreme Court explained: "For a third strike defendant, the minimum term of the indeterminate life sentence is the greatest of three time periods. The first period (option one) is '[t]hree times the term otherwise provided as punishment' for the felony offense, not including enhancements. (§§ 667, subd. (e)(2)(A)(i), 1170.12, subd. (c)(2)(A)(i).) The second period (option two) is 25 years. (§§ 667, subd. (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii).) The third period (option three) is '[t]he term determined

---

[5] The trial court sentenced defendant on count 1 as follows:

—Pursuant to section 667, subdivision (e)(2)(A)(iii), a base term of 33 years to life comprised of the seven-year minimum parole eligibility term;

—Plus a consecutive 25 years to life enhancement pursuant to section 12022.53, subdivisions (d) and (e)(1);

—Plus a consecutive one-year enhancement pursuant to section 667.5, subdivision (b);

—Sentence on the section 12022.53, subdivisions (b), (c) and (e)(1) enhancements was imposed, but stayed pursuant to section 12022.53, subdivision (f) (one enhancement under this section per person, per crime);

—Sentence on the gang enhancement was not imposed under the terms of section 12022.53, subdivision (e)(2).

Sentence on the remaining counts was stayed pursuant to section 654.

by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, *or* any period prescribed by Section 190 *or* 3046.' (§§ 667, subd. (e)(2)(A)(iii), 1170.12, subd. (c)(2)(A)(iii).)" (Italics added.)

Here, the trial court selected option 3 and calculated the minimum term of the Three Strikes sentence under section 3046. The first two alternatives in option 3 for calculating the minimum period of confinement did not apply here. Section 1170 addresses determinate sentencing and did not apply because the sentence for attempted premeditated murder is not a determinate sentence. Section 190 provides the punishment for murder, not attempted murder. The trial court chose the third alternative under option 3, which is "any period prescribed by Section . . . 3046." (§ 667, subd. (e)(2)(A)(iii).)

Section 3046 provides in part:

"(a) No prisoner imprisoned under a life sentence may be paroled until he or she has served the greater of the following:

"(1) A term of at least seven calendar years.

"(2) A term as established pursuant to any other provision of law that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole."

Although section 3046 does not expressly state whether enhancements are to be included in determining a "term as established pursuant to any other provisions of law," under section 3046, subdivision (a)(2), our Supreme Court has held in analogous settings that they are. (See *People v. Acosta* (2002) 29 Cal.4th 105, 115 [124 Cal.Rptr.2d 435, 52 P.3d 624] (*Acosta*).)

The third alternative in section 667, subdivision (e)(2)(A)(iii) uses virtually identical language to the minimum parole eligibility period prescribed by section 667.7, subdivision (a)(1) for infliction of great bodily injury by defendants who have served two prior separate prison terms. The statute provides the minimum parole eligibility shall be "20 years, *or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046*, whichever is greatest." (§ 667.7, subd. (a)(1), italics added.)[6] Like section 667, subdivision (e)(2)(A) presently before us, section 667.7, subdivision (a)(1) gives the trial court three alternatives to calculate the longest minimum parole eligibility date: "(1) 20 years, (2) the period equal to the hypothetical determinate term that would be imposed under section 1170

---

[6] Section 667.7 is a habitual criminal sentencing statute that predates the Three Strikes law. (*Acosta, supra*, 29 Cal.4th at p. 115.)

(if the qualifying conviction is one that otherwise would be punishable under § 1170; [citation]), or (3) the 'period prescribed by Section 190 or 3046' (if the qualifying conviction is murder or any other offense that otherwise, independently of section 667.7, would be punishable by a life sentence)." (*People v. Jenkins* (1995) 10 Cal.4th 234, 243 [40 Cal.Rptr.2d 903, 893 P.2d 1224] (*Jenkins*).)

The defendant in *Jenkins* had been convicted of, among other things, second degree murder, punishable under section 190. In determining the "period prescribed by section 190" the court was confronted with the question whether any applicable enhancements were to be included in determining the minimum parole eligibility date under section 667.7. The court answered in the affirmative, holding that, "in calculating the third alternative minimum period of required imprisonment (where the qualifying felony conviction is murder), any applicable enhancement must be included as a component if that same enhancement would be used to lengthen a term of imprisonment imposed under section 190." (*Jenkins, supra*, 10 Cal.4th at pp. 251–252.) It found that any other rule could cause the anomaly of sentences under the habitual criminal statute being more lenient than sentences for nonrecidivists. But the court also relied on language in section 3046—the statute before us now—even though the sentence for second degree murder sentence at issue in *Jenkins* is *not* found in that section. "Section 3046 provides that '[n]o prisoner impris-oned under a life sentence may be paroled until he or she has served at least seven calendar years *or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole*, whichever is greater. . . .' (Italics added.) The italicized language referring to a term established by any other 'section of law' clearly includes the 15-year minimum term provided under section 190." (*Jenkins*, at pp. 250–251; see also *People v. Jefferson* (1999) 21 Cal.4th 86, 90, 97–100 [86 Cal.Rptr.2d 893, 980 P.2d 441] [15-year minimum parole eligibility in § 186.22, subd. (b)(4) is an "other section of law" under § 3046, subd. (a)(2) and supplants the seven years of § 3046, subd. (a)(1) in applicable street gang attempted murders].)

The court went on to explain how this applies to enhancements: "Further-more, section 667, subdivision (a)(1), itself specifically provides that the five-year enhancement for each separate prior serious felony conviction prescribed by that provision 'shall run consecutively' to the term imposed for the present offense. *Accordingly, under the terms of section 3046, which incorporates by reference other relevant sections prescribing the minimum period of time a person sentenced to a life term must be imprisoned before becoming eligible for parole*, it appears clear that the defendant in the present case, if sentenced under section 190, would not be eligible for parole until he had served the 15-year minimum prescribed by section 190, plus the 2 consecutive 5-year enhancements prescribed by section 667, subdivision (a),

for a total of 25 years. *Because the third alternative of section 667.7 refers specifically to section 3046, it follows that the same minimum period of imprisonment is embodied in the third alternative."* (*Jenkins, supra,* 10 Cal.4th at p. 251, italics added.) Later the court reiterated: "Rather, the minimum period of imprisonment required under the second [(§ 190)] and third [(§ 3046)] alternatives must include as a component the term of any enhancement imposed under section 667, subdivision (a), for a prior serious felony conviction." (*Id.* at p. 254.) *Jenkins* explains that, when section 190 or 3046 is used in the calculation under the third alternative of section 667.7, the calculation must also include applicable enhancements.

We conclude that the same reasoning applies equally to a Three Strikes sentence under section 667, subdivision (e)(2)(A)(iii), the statute under which defendant here was sentenced. No reason has been suggested to give a different interpretation to identical language in two statutes (§ 667, subds. (e)(2)(A)(iii), (a)(1)), both of which are intended to punish habitual criminals more harshly. Any doubt about *Jenkins*'s application to the Three Strikes law, including section 667, subdivision (e)(2)(A)(iii), was dispelled by our Supreme Court's decision in *People v. Acosta, supra,* 29 Cal.4th 105. In words that could not be more precise: "Initially, we agree with [the defendant's] implicit assumption that *Jenkins* applies to the Three Strikes law and establishes that the calculation under option 3 includes certain enhancements." (*Id.* at p. 115.)[7]

Based on *Jenkins* and *Acosta,* we hold that in calculating the third alternative to option 3 of the Three Strikes law, the sentencing court must consider any enhancement that would otherwise be included in determining the defendant's minimum parole eligibility period under section 3046, subdivision (a)(2). Applied to defendant here, this includes both the 25-year-to-life section 12022.53, subdivisions (d), (e)(1) firearm enhancement and the one-year section 667.5, subdivision (b) prior prison term enhancement previously found true. It follows that the trial court correctly determined that defendant's base sentence under option 3 was 33 years. Since 33 years is greater than the 25 years under option 2 and greater than 21 years under option 1, the trial court correctly found the base term was 33 years.[8] To that base term the trial court properly added 26 years for the enhancements under sections 12022.53, subdivisions (d), (e)(1) and 667.5, subdivision (b) to establish the minimum parole eligibility period of 59 years.

---

[7] *People v. Coker* (2004) 120 Cal.App.4th 581, 586–590 [15 Cal.Rptr.3d 553], relied on by the People is inapplicable as it is not an indeterminate sentencing case. *People v. Byrd* (2001) 89 Cal.App.4th 1373 [108 Cal.Rptr.2d 243], not cited in respondent's brief but relied on by the People in the trial court, does include a charge of attempted premeditated murder but the discussion of that count is in the unpublished portion of the opinion.

[8] Under option 1, the court triples the minimum punishment—here the seven-year minimum parole eligibility period—for a total of 21 years. The court does not treble the enhancements as part of this calculation. (*People v. Williams, supra,* 34 Cal.4th at p. 403.)

## DISPOSITION

The judgment is affirmed.

Flier, J., and Grimes, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 20, 2011, S190963.