Filed 4/28/16  P. v. Becerra CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESUS BECERRA, JR.,<br><br>    Defendant and Appellant. | G051370<br><br>(Super. Ct. No. 13NF0191)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kazuharu Makino, Retired Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Jesus Becerra, Jr., appeals from a judgment after a jury convicted him of possession for sale of a controlled substance, misdemeanor possession of controlled substance paraphernalia, and sale or transportation of a controlled substance, and the trial court, at a bench trial, found true he committed the two felony counts for the benefit of a criminal street gang. Becerra argues insufficient evidence supports the verdicts and his Sixth Amendment confrontation rights were violated. None of his contentions have merit, and we affirm the judgment.

FACTS

One afternoon, Fullerton police officers were conducting undercover surveillance of a residence. The property consisted of a main house, a dwelling behind the house, and a rear shed. Becerra's brother, Jorge Becerra (Jorge), lived in the shed.

Two men approached the residence's gate. One of the men spoke to somebody on the other side of the gate and gave the individual money in return for an item. The two men walked away. About 20 minutes later, Becerra left through the same gate, looked around, got into a Chevrolet Impala, and drove away. Officer Pedram Gharrah notified other officers to stop Becerra's vehicle because he believed he had witnessed a hand-to-hand drug transaction.

Officers Jeff Corbett and Kenneth Edgar observed the vehicle drive over the limit line and they initiated a traffic stop. Becerra consented to a search of the vehicle. Corbett found a clear plastic baggie containing methamphetamine under the driver's seat. The number "6" was written on the baggie.

Meanwhile, Detective Joseph Zuniga entered the residence to conduct a probation search on Jorge. The southwest portion of the middle building was locked, and Zuniga obtained a search warrant for that room. Inside the room, he found two baggies containing methamphetamine, 66 empty one and three-fourth inch baggies, 25 empty one and one-half inch baggies, a digital scale, a methamphetamine pipe, several knives, and mail belonging to Becerra. The smaller empty baggies matched the baggie found in

2

Becerra's car. There was a jar containing $125 in the kitchen. Forensic testing later revealed the methamphetamine in the car weighed 1.06 grams and the two baggies of methamphetamine in the room weighed 2.66 grams and 32 milligrams.

An information charged Becerra with possession for sale of a controlled substance (Health & Saf. Code, § 11378) (count 1), misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364.1, subd. (a)) (count 2), and sale or transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) (count 3). As to counts 1 and 3, the information alleged Becerra was previously convicted of violating Health and Safety Code section 11378 (Health & Saf. Code, §§ 1203.07, subd. (a)(11), 11370.2, subd. (c)), and he committed those for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1), all further statutory references are to the Pen. Code, unless otherwise indicated). Finally, the information alleged Becerra suffered two prior strike convictions (§§ 667, subds. (d), (e)(2)(a) & 1170.12, subds. (b), (c)(2)(A)), and one prior serious felony (§ 667, subd. (a)(1)).

The trial court granted Becerra's pretrial motion to bifurcate the gang enhancements and prior conviction allegations. The court dismissed one of the strike priors in the interests of justice. Becerra waived his right to a jury trial on the gang allegations and prior convictions.

At trial, Edgar testified as an expert regarding narcotics. He stated most drug dealers have weapons for protection because buyers frequently try to rob the seller of money or drugs. He explained numbering the baggies was a way to keep track of the drugs and if a baggie has the number "6" on it, the first five baggies have either been sold or are available for sale. Edgar testified he was familiar with the items seized at the residence and the methamphetamine would yield over 200 individual doses. Based on the hand-to-hand drug transaction, the number on the baggie, and all the other evidence, Edgar opined the methamphetamine in the residence was possessed for sale.

3

The jury convicted Becerra of all counts. Becerra admitted the truth of the prior convictions. There was a bench trial on the gang allegations.

The prosecution offered the testimony of Zuniga, a gang expert. Zuniga testified concerning his background, training, and experience investigating traditional turf oriented Hispanic street gangs. He explained that as a narcotics detective, he investigated gang crimes involving narcotics, including speaking with confidential informants about drug sale operations in gangs. He added that as a gang detective, he investigated about 200 gang crimes. He attended courses on the Mexican Mafia, including one where two former high ranking members spoke about the connection between the Mexican Mafia and Hispanic street gangs. Zuniga also read books written by those two individuals.

Zuniga stated he had investigated the gang Fullerton Tokers Town (FTT). He testified concerning its membership, common signs and symbols, and subsets. He opined its primary activities were murder, assault, robbery, sales of narcotics, felony vandalism, and gun possession. He testified concerning the statutorily required predicate offenses involving FTT gang members Edgar Velez (burglary) and Samuel Torres Bonilla (vehicle theft). Zuniga opined FTT was a criminal street gang as statutorily defined.

Zuniga testified he knew Becerra. Zuniga opined Becerra was an active participant in FTT at the time of the offenses based on his prior documented arrests, his associations with other FTT gang members, his FTT tattoos, and the fact he lives in the "heart" of FTT claimed gang territory. Zuniga stated he was at the residence when the hand-to-hand drug transaction occurred and the residence was known as a FTT hangout and place of gang activity. He explained that at the residence in Becerra's room, he found a photograph of FTT gang members and a "'rest in peace'" T-shirt depicting a FTT gang member who had passed away, an item Zuniga characterized as sacred to gang members.

4

Zuniga opined Becerra was selling narcotics for the benefit of, at the direction of, or in association with FTT, with the specific intent to promote, further, or assist in criminal conduct by FTT gang members. He stated a non-gang member who sells narcotics in gang territory will either be forced to pay a tax to that gang or will not be able to sell. He explained gang members who sell narcotics are required to pay a tax, a predetermined amount at a set time, to the Mexican Mafia, a prison gang, which secures the gang's safety in prison. He added that FTT had failed to pay the tax in the past resulting in a "green light" on its members in prison. He said it was extremely important for an individual gang member to pay the tax by either fronting narcotics to certain members of the same gang or selling to those individuals. Zuniga stated that paying the tax keeps the gang in good standing with the Mexican Mafia and demonstrates the gang has money. In forming his opinion Zuniga relied in part on a document from the Department of Homeland Security where a FTT gang member discussed paying the tax. Zuniga opined Becerra was selling drugs to benefit FTT because he was selling drugs in FTT claimed territory without interruption.

On cross-examination, Zuniga stated Becerra joined FTT when he was 13 years old and got his FTT tattoos when he was a young man. Zuniga admitted there was no evidence the Mexican Mafia taxed Becerra or Jorge. He also admitted Edgar told him Becerra, 31 years old and a father of two children at the time of the offenses, left FTT many years ago, was inactive, and had only one law enforcement contact during the last six years, the one resulting from the charged offenses here. When defense counsel asked Zuniga about the discrepancy between his opinion Becerra was active in FTT and Edgar's statement he was not, Zuniga responded what he heard and what he believed are "two different things." He explained inactive gang members cannot live openly in claimed gang territory and display gang tattoos without risking confrontation.

5

The trial court found true Becerra committed counts 1 and 3 for the benefit of a criminal street gang. The court sentenced Becerra to three years on count 3, two years on the street terrorism enhancement, and five years for the conviction for a total prison term of 10 years. The court imposed and stayed sentence on count 1 and imposed 10 days jail with time served on count 2.

DISCUSSION

*I. Sufficiency of the Evidence*

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).) However, we need not affirm a decision supported by a mere scintilla of evidence. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

*A. Street Terrorism Enhancements*

Becerra argues insufficient evidence supports the trial court's findings he committed counts 1 and 3 for the benefit of a criminal street gang. We disagree.

"[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for

6

the felony or attempted felony of which he or she has been convicted, be punished [with an additional term] . . . ." (§ 186.22, subd. (b)(1).)

In *Albillar, supra,* 51 Cal.4th at page 60, the Supreme Court explained that although not every crime committed by gang members is related to a gang for purposes of the first prong, a crime can satisfy the first prong when it is gang related, meaning it was done for the benefit of, at the direction of, or in association with a gang. The court also explained the second prong, which requires the defendant commit the gang-related felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)), need not encompass proof the defendant committed the crime with the specific intent to promote, further, or assist *other* criminal conduct by gang members. Instead, that subdivision "is unambiguous and applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." (*Albillar, supra,* 51 Cal.4th at p. 66.) The court concluded, "the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*." (*Id.* at p. 67.)

The *Albillar* court stated a gang expert's opinion is admissible *as part of* the evidentiary showing on how the crimes can benefit the gang. (*Albillar, supra,* 51 Cal.4th at p. 63.) "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the . . . section 186.22, subdivision (b)(1), gang enhancement. (*Albillar, supra,* 51 Cal.4th at p. 63.)" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

*1. Gang Related*

Based on the entire record, the trier of fact could reasonably conclude Becerra committed counts 1 and 3 in association with and for the benefit of FTT. Officers observed a person at the residence's gate engage in what appeared to be a hand-to-hand drug transaction and minutes later Becerra left through the same gate. When officers stopped Becerra in his car, he had methamphetamine in a baggie.

7

Additionally, officers found the following in the locked portion of the residence's middle building: (1) Becerra's mail; (2) enough methamphetamine for 200 doses; (3) indicia of drug sales, including baggies matching the bag found in Becerra's car; and (4) indicia of FTT gang membership. The evidence demonstrated Becerra lived in FTT claimed gang territory, joined FTT as a teenager, and had FTT tattoos.

Zuniga testified that regardless of whether a person is or is not a gang member, a person selling narcotics in claimed gang territory is required to pay a tax. A non-gang member must pay a tax to the gang in which territory he is selling narcotics. A gang member who is selling narcotics must pay a tax to the Mexican Mafia for protection of the gang members in prison. From this evidence a reasonable trier of fact could conclude that the gang would benefit from narcotics sales, either through the proceeds from the sales and/or from the Mexican Mafia's protection in prison. Based on this evidence, a reasonable trier of fact could conclude Becerra was a FTT gang member who was selling narcotics in association with and to benefit FTT. Thus, there was sufficient evidence counts 1 and 3 were gang related.

Becerra spends much time arguing the evidence demonstrated he was not an active member of FTT at the time of the offenses. His concession active gang membership is not an element of the street terrorism enhancement is dispositive and no further discussion of this claim is required. (*Albillar, supra,* 51 Cal.4th at p. 68 [§ 186.22, subd. (b)(1), liability "does not depend on membership in a gang at all"].)

Becerra also complains the predicate offenses were not drug offenses. For both the street terrorism offense and enhancement, a criminal street gang requires proof of three elements: (1) an ongoing association of three or more individuals with a common name, sign, or symbol; (2) the commission of specified crimes is one of its primary activities; and (3) the group's members either separately or as a group have engaged in "a pattern of criminal gang activity." (§ 186.22, subd. (f).) A pattern of

8

criminal gang activity requires a showing the gang committed two or more enumerated crimes on separate occasions, or by two or more persons. (§ 186.22, subd. (e).)

Unfortunately, the Attorney General does not address this argument. In fact, the Attorney General does not spend much time explaining how the evidence satisfied the two prongs as interpreted in *Albillar*. Nevertheless, Becerra cites to no authority, and we found none, that requires the predicate offenses to be the same type as the charged offenses. We think it the better practice though that the prosecution attempt to establish the predicate offenses with the same type of crime as the charged offense.

*2. Specific Intent*

Based on the entire record, the trier of fact could also reasonably conclude Becerra committed counts 1 and 3 with the specific intent to promote, further, or assist criminal conduct by *gang members*. As Becerra concedes, a lone gang member may have his sentence enhanced by section 186.22, subdivision (b)(1). (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138-1139.) Here, based on the entire record, the trier of fact could reasonably infer Becerra was a FTT gang member who was openly selling methamphetamine in FTT claimed gang territory. Officers observed Becerra leave the home where they had just minutes before witnessed what appeared to be a hand-to-hand drug transaction. Officers found drugs in Becerra's vehicle and his bedroom. Officers also found indicia of FTT gang membership in his bedroom.

Zuniga opined Becerra was a member of FTT, a criminal street gang whose primary activity was narcotics sales. Zuniga also explained a gang member who sells narcotics benefits the gang because the proceeds are used to pay a tax to the Mexican Mafia to keep the gang in good standing and for the Mexican Mafia's protection of the gang's members in prison. Zuniga based his opinion in part on statements from another FTT gang member who confirmed payment of the tax. Contrary to Becerra's claim otherwise, the evidence in this case was not limited to simply he was a gang member and he sold narcotics. (See *People v. Rios* (2013) 222 Cal.App.4th 542, 573-574.)

9

Like in *People v. Ferraez* (2003) 112 Cal.App.4th 925, 931, where the evidence included gang expert testimony, defendant's admissions, and other evidence defendant planned to sell drugs in claimed gang territory, here Zuniga's testimony and Becerra's act of selling drugs in FTT claimed gang territory was sufficient evidence Becerra possessed, sold, and transported methamphetamine with the specific intent to promote FTT. Thus, there was sufficient evidence supporting the street terrorism enhancements as to counts 1 and 3.

B. *Count 2*

Becerra contends there was insufficient evidence he possessed the methamphetamine pipe.[1] Not so.

It is a crime to possess an object used for unlawfully injecting or smoking a controlled substance, knowing of the object's presence, and knowing it to be an object used for unlawfully injecting or smoking a controlled substance. (Health & Saf. Code, § 11364.)[2] "Possession may be physical or constructive, and more than one person may possess the same contraband. [Citation.]" (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.) Constructive possession requires that a defendant have the right to exercise dominion or control over either (a) the contraband or (b) the place the contraband is found. (*Ibid.*) While circumstantial evidence can be enough to show dominion or control (*id.* at pp. 410-411), mere presence or proximity to the contraband is not enough. (*People v. Small* (1988) 205 Cal.App.3d 319, 326.) The standard of review is the same as discussed above. (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1058.)

---

[1] Becerra concedes he does not dispute the sufficiency of the evidence supporting counts 1 and 3.

[2] The information charged Becerra with violating Health and Safety Code section 11364.1, subdivision (a). That section remained in effect until after Becerra's trial when the statute expired by operation of a sunset provision on December 31, 2014. Health and Safety Code section 11364 mirrors that section's language.

Here, the evidence at trial demonstrated that in the locked room of the residence's middle building, officers found mail addressed to Becerra, methamphetamine, baggies that matched the baggie discovered in Becerra's car, and a methamphetamine smoking pipe. This evidence connected Becerra to the locked room, and the jury could reasonably rely on this evidence to conclude Becerra lived in the room and its contents, including the methamphetamine pipe, were his. The fact the evidence did not detail the quantity or type of mail, or that there were other people on the property does not alter our conclusion. Possession need not be exclusive, and it is sufficient Becerra's mail was found in the locked room. (*Miranda, supra,* 192 Cal.App.4th at pp. 410-411 [circumstantial evidence sufficient to demonstrate dominion and control].) Based on this evidence, it was reasonable to conclude Becerra possessed the methamphetamine pipe.

## II. *Sixth Amendment*

Becerra contends Zuniga's testimony included improper "testimonial hearsay" in violation of his Sixth Amendment right to confrontation pursuant to *Crawford v. Washington* (2004) 541 U.S. 36. He asserts Zuniga improperly testified concerning prior contacts and interviews with gang members, review of police records and other government documents, and conversations with other gang detectives. Becerra acknowledges *People v. Gardeley* (1996) 14 Cal.4th 605, 619, held the basis for an expert's opinion is not subject to the hearsay rule because it is not admitted for the truth of any assertions, and that we are obligated to follow *Gardeley* pursuant to *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455. Becerra raises the issue to preserve his claim for federal review and because this issue is pending before the California Supreme Court (*People v. Sanchez* (2014) 223 Cal.App.4th 1, review granted May 14, 2014, S216681 and *People v. Archuleta* (Apr. 11, 2014, E049095), review granted June 11, 2014, S218640). We accept Becerra's concession we are bound by *Gardeley*.

11

## DISPOSITION

The judgment is affirmed.


                                     O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.