Filed 11/12/20  P. v. Rocha CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ORLANDO ROCHA,<br><br>　　　Defendant and Appellant. | E072980<br><br>(Super.Ct.No. FVI18002910)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Tony Raphael, Judge.  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Robin Urbanski, and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Robert Orlando Rocha guilty of three counts of attempted voluntary manslaughter. (Pen. Code, § 664 & 192, subd. (a).)[1] The jury found true the allegations that (1) the three felonies were committed to benefit a criminal street gang (§ 186.22, subd. (b)(1)); and (2) defendant personally used a firearm when committing the felonies (§ 12022.5, subd. (a)). The trial court found defendant suffered a prior strike conviction. (§ 1170.12, subds. (a)-(d).) The trial court sentenced defendant to prison for a term of 40 years. Defendant contends the specific intent element of the gang enhancement (§ 186.22, subd. (b)) is not supported by substantial evidence. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On January 27, 2018, there was a candlelight vigil for Darryl Martin[2], who passed away following a traffic accident in Los Angeles County. Darryl was a member of the Young Gods, which was a criminal street gang in Apple Valley. The vigil took place in a carport, at an apartment complex in Apple Valley. Members of the Young Gods regularly spent time at the apartment complex. Members of the Young Gods, including Tyrell Tate, attended the vigil.

Ronald Martin was a documented member of the Project Watts Crips, which was a criminal street gang. Defendant was also a member of the Project Watts Crips.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

[2] We use first names for clarity as some individuals involved in the case share last names. No disrespect is intended.

2

Defendant became involved with the gang at age nine. Defendant was "born and raised in the Projects Watts Crips area," and later moved to San Bernardino. Defendant spent time at Darryl's house. Defendant and Ronald attended the vigil. At the vigil, defendant introduced himself to Tyrell saying, " 'I'm Gangster Bob from P.J. Watt[s] Crips.' "

During the vigil, Tyrell's brother, Joshua Tate, "was really intoxicated." Joshua "walk[ed] down the street to use the restroom like in the field." While down the street, Ronald and Joshua "exchanged words." Ronald "knocked out" Joshua. Ronald and Joshua returned to the vigil. Ronald was agitated and yelling. Ronald yelled, " 'You bitch ass n****** are tripp'n on me.' Like he kept saying, 'That's why I knocked that bitch ass n**** out right there.' " Tyrell heard Ronald and responded, " 'You did what to my brother?' " Tyrell walked toward Joshua.

Ronald yelled "P.J. Watts." Ronald punched Tyrell's eye. Tyrell bent over with blood in his eye, and then "[e]verybody started fighting" and "everybody ended up in the middle of the street." The fight was like "a mob," involving 40 to 50 people who surrounded Tyrell and "started throwing punches" at Ronald. Someone yelled, " 'Fuck P.J.s.' " Ronald was "like the black Rambo. Like he fought everybody, like."

People, including defendant, tried to break up the fight by pulling others away from the melee. Defendant "went into the middle to try to grab" Ronald and pull him away. Defendant was unable to remove Ronald from the fight because Ronald fell to the ground. However, Ronald "kind of jumped up really fast," and "went to try to fight again." Defendant went to his vehicle, reached inside, and then began shooting a gun.

3

Defendant shot Roman Henderson in the leg and buttocks. Henderson watched the fight and was not near the fighting when he was shot. Henderson fell to the ground after being shot. Defendant shot Melva Travis in the back. Travis was pulling people away from the fight. After being shot, Travis fell to the ground. Defendant shot Corry Johnson in the foot. Johnson was looking for Travis and pulling people away from the fight when he was shot. Johnson fell to the ground after being shot.

Ronald kicked Henderson's face while Henderson was on the ground. Henderson asked for an ambulance. Ronald responded, " 'Fuck you[r] ambulance.' " Ronald approached Travis while she was on the ground. Ronald said, " 'You could die too, bitch,' and he kicked her in the head."

Project Watts Crips had approximately 300 documented members. The gang uses acronyms, such as "PJ for Project." The geographical area claimed by the gang "is the Imperial Courts Housing Developments in Watts." However, there are "satellite locations all throughout Southern California and parts of Nevada." Members of the gang are in San Bernardino County and Kern County. The gang is "growing everyday" in the high desert area.

In closing argument, the prosecutor argued, "So how does the defendant's conduct help [Ronald]? Because it's the defendant's conduct that allows both of them to succeed. [¶] [Ronald] kicking Melva Travis in the head while she's on the floor telling her, yeah, die. [Ronald] kicking Roman Henderson. The defendant also helps because he shoots individuals at the location."

4

**DISCUSSION**

Defendant contends substantial evidence does not support the specific intent element of the gang enhancement (§ 186.22, subd. (b)).

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 (*Kraft*).)

The gang enhancement requires evidence that a defendant committed a felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) If a defendant "commit[s] the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*People v. Albillar* (2010) 51 Cal.4th 47, 68.) "There is rarely direct evidence that a crime was committed for the benefit of a gang. For this reason, 'we routinely draw inferences about intent from the predictable results of action. . . .' [Citation.] 'Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist

gang members in the commission of the crime.' " (*People v. Miranda* (2011) 192 Cal.App.4th 398, 411-412.)

Ronald was acting like "Rambo"—fighting multiple people. The jury could reasonably find that defendant intended to assist Ronald in criminal conduct because it was predictable that Ronald, who was acting like Rambo, would continue his acts of violence if given the opportunity. By shooting the victims, defendant gave Ronald the opportunity to perpetrate further violence, and Ronald, acting predictably in the moment, took advantage of that opportunity. After defendant shot the three victims, Ronald kicked two of the victims' heads. Kicking the victims was, at a minimum, battery (§ 242), which is a crime. The jury could reasonably find that defendant's intention was demonstrated by the predictable results of defendant's actions. (*People v. Miranda, supra,* 192 Cal.App.4th at p. 411 [" 'we routinely draw inferences about intent from the predictable results of action' "].)

A field identification card reflected Ronald was a member of Project Watts Crips. Ronald's gang moniker is Bosco. At the vigil, Ronald "introduced himself as Bosco from P.J. Watts." Prior to punching Tyrell, Ronald yelled, "P.J. Watts." It is dangerous for a person to yell a gang's name if the person is not a member of the gang. The field identification card, Ronald's act of introducing himself with a gang affiliation, and Ronald's act of shouting a gang name are evidence that support a finding that Ronald was a gang member.

Defendant and Ronald exchanged text messages with one another. This evidence shows that defendant knew Ronald. After the shooting and kicking of the victims,

6

Ronald said to defendant, " 'Let's roll, cuz.' " "[C]uz is commonly used by Crip members. As a form of saying, whether it's brother, or hey, let's roll, hommie [*sic*], they will use, let's roll, cuz." This evidence shows that Ronald used gang terminology with defendant. One can infer from that use of terminology that Ronald was sufficiently familiar with defendant to know that defendant was a gang member.

Additionally, Travis described defendant as Ronald's "homie. His friend." Defendant tried to pull Ronald out of the fight. One can infer that defendant attempted to aid Ronald because defendant and Ronald were friends. Defendant and Ronald's friendship indicates that defendant is familiar with Ronald. Further, defendant was born in 1975 and became involved with the Project Watts Crips at the age of nine. This evidence reflects defendant had a long history with the Project Watts Crips. From this evidence a trier of fact could infer that defendant was familiar with other members of Project Watts Crips, such as his friend Ronald.

Further, immediately before the fight began, Ronald was walking "in the middle of the crowd" and yelling. Ronald yelled, "P.J. Watts." One witness said that, as Ronald "continue[d] to yell . . . people started to gather to find out exactly what was going on." Thus, Ronald was yelling loudly. Another witness said that "[e]verybody" at the vigil was present at the start of the fight. One can infer that defendant was part of the "[e]verybody" that was nearby because he tried to break-up the fight by pulling Ronald away before going to his vehicle to retrieve his firearm. The fact that defendant was close enough to reach Ronald in the melee, indicates that he was nearby when the fighting began, which indicates defendant would have been close enough to hear Ronald

7

yell "P.J. Watts." Given that defendant is familiar with P.J. Watts, he would know what the name meant and that the shouting of the gang name meant Ronald was a gang member.

In sum, from the text messages, gang lingo, friendship, defendant's long history with the gang, and Ronald shouting "P.J. Watts," a reasonable trier of fact could find that defendant was aware that Ronald was a member of the Project Watts Crips.

In sum, the evidence reflects Ronald was a gang member; defendant knew Ronald was a gang member; and it was predictable that Ronald would continue his acts of violence if defendant shot the victims. A trier of fact could reasonably find that defendant intended, when shooting the victims, to assist Ronald, who was a gang member, with criminal acts. We conclude substantial evidence supports the jury's true finding on the gang enhancement (§ 186.22, subd. (b)).

Defendant contends there is no evidence to support the gang expert's opinion that violence by one gang member creates a reputation for violence that assists other gang members in committing future crimes. Our analysis *ante* does not rely upon such expert testimony. Because we do not rely upon that expert testimony, we do not delve further into that particular argument.

Defendant contends that if there is some evidence in the record that he intended to assist the criminal conduct of gang members, then the evidence is insufficient "because the record establishes [defendant] was also motivated by his own self interests." Defendant points to expert testimony in the record reflecting that if a gang

8

member does not assist a second gang member who is under attack, then that gang member will be punished for failing to assist.

"Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*Kraft*, *supra*, 23 Cal.4th at pp. 1053-1054.)

The evidence of defendant's intent in this case is circumstantial. Defendant is correct that the record includes expert testimony from which one might conclude defendant shot the victims with the intent of saving himself from gang discipline. However, there is also evidence in the record from which one could conclude that defendant shot the victims with the intent of assisting Ronald in criminal acts. It was the jury's role to make a decision regarding that evidence. On appeal, our role is to determine if there is substantial evidence to support the jury's decision. (*Kraft*, *supra*, 23 Cal.4th at pp. 1053-1054.) Accordingly, we cannot reverse on the basis of an alternate intent.

Defendant contends the lack of substantial evidence violated his right of due process. We have concluded substantial evidence supports the true finding on the gang enhancement (§ 186.22, subd. (b)). Therefore, we conclude defendant's right of due process was not violated.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

RAMIREZ _____

P. J.

SLOUGH _____

J.