Filed 10/6/21  P. v. Smith CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>BRANDON SMITH,<br><br>　　　Defendant and Appellant. | D077847<br><br><br>(Super. Ct. No. SCD278660) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael S. Groch, Judge.  Affirmed in part; reversed in part; sentence modified.

William P. Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A jury found Brandon Smith guilty of two counts of robbery (Pen. Code, § 211,[1] counts 1 & 2) and one count of petty theft (§ 484, count 4).[2]  Smith committed the crimes with his brother and codefendant, Anthony Watson.[3] Smith admitted having suffered two strike priors (§§ 667, subds. (b)–(i), 668, 1170.12), a serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and two prison priors (§§ 667.5, subd. (b), 668).

At sentencing, the trial court struck one of the strike priors, and sentenced Smith to a total of 19 years in prison, consisting of 10 years on count 1—the upper term of five years doubled because of the remaining strike prior, a consecutive two years for count 2, calculated at one-third the midterm doubled due to the strike, a consecutive five years for the serious felony prior, and two consecutive one-year terms for the prison prior enhancements.  The court sentenced Smith to "time served" on count 4.

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]     The jury found Smith *not* guilty of an additional count of petty theft (§ 484) charged in count 3.

[3]     We affirmed the judgment as to Watson in *People v. Watson* (Apr. 8, 2021, D076475) [nonpub. opn.].

## II.

## FACTUAL BACKGROUND

A.  *Appletree Market theft* (*Count 4*)[4]

One afternoon in July 2018, Watson and Smith were checking out at the Appletree Market. After the cashier opened the register, both men reached over the counter and started grabbing money. They then fled the store.

B.  *Yum Yum Yo robbery (Count 2)*

One afternoon in August 2018, Watson and Smith walked into a sandwich shop called Yum Yum Yo. Smith ordered a sandwich and handed the shop owner, K.D., a five-dollar bill. When K.D. opened the register, both men reached over the counter and started to grab money. K.D. was scared. K.D. attempted to close the drawer to the register, but was unable to immediately do so because Watson's and Smith's hands were inside the drawer. The men fled the shop with money from the register.

C.  *GameStop robbery (Count 1)*

Approximately two weeks after the Yum Yum Yo robbery, Watson and Smith were at a store that sells video games called GameStop.[5] One of the men told the store's assistant manager, J.F., that he wanted to purchase a video game. After J.F. retrieved the game from behind the counter, J.F. opened the cash register to complete the sale. Watson and Smith immediately reached over the register and began to grab money from it.

---

[4]    We discuss the offenses in the chronological order in which they were committed.

[5]    In the record, the store is referred to as "Game Stop"; we use the proper name of the business, "GameStop."

3

While taking the money with one hand, Watson grabbed J.F.'s wrist with his other hand and "pinned" it against the side of the cash register. J.F. grabbed Watson's hand to try to stop him. After a brief struggle, Watson broke free from J.F.'s grasp and followed Smith out of the store with money that they had stolen. J.F. sustained a minor injury to his hand during the incident.

### III.

### DISCUSSION

A. *The prosecutor's closing argument and the trial court's jury instructions did not erroneously allow the jury to find Smith guilty of the Yum Yum Yo robbery merely upon a finding that the defendants were guilty of petty theft*

Smith contends, "The prosecutor's closing argument, coupled with an ambiguity in [the] trial court's instructions, erroneously and prejudicially allowed the jury to find appellant guilty of robbery on count two [the Yum Yum Yo robbery] if the jury found both defendants were guilty of the target offense of petty theft, a legally invalid theory in this case." (Boldface omitted.)

We review Smith's claim de novo.[6] (See *People v. Uribe* (2011) 199 Cal.App.4th 836, 860 [a claim of prosecutorial error is reviewed independently]; *People v. Mitchell* (2019) 7 Cal.5th 561, 579 ["An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law"].)

---

[6] The People contend that Smith forfeited this claim by failing to object in the trial court to either the prosecutor's argument or to the court's jury instruction. Notwithstanding Smith's possible forfeiture, we exercise our discretion to consider the substance of Smith's claim.

1. *Factual and procedural background*

    a. *The jury instruction on the natural and probable consequences doctrine*

At trial, while the trial court was instructing the jury, the court excused the jury from the courtroom for a recess. During the recess, the following colloquy occurred:

> "The court: [W]e're outside the presence of the jury. I stopped at [CALCRIM] instruction [number] 403 because I'm concerned about confusion with the jury. [¶] [CALCRIM No.] 403 reads: Before you may decide whether the defendant is guilty of robbery, you must decide that he is guilty of petty theft. And then it goes on to a natural and probable consequences discussion.
>
> "That's true in terms of aiding and abetting, it's not true in terms of straight and direct liability. So perhaps it should be modified to say on an aiding and abetting theory, before you decide whether a defendant is guilty of robbery.
>
> "[The prosecutor]: Your Honor, my intention was to argue this . . . as it relates to a conspiracy theory. And I was precluded from -- my request for conspiracy instructions, which I believe the evidence supports, was denied. But that is what I believe this instruction really related to, because they were both direct perpetrators in petty theft in certain incidents, or two incidents of alleged robbery.
>
> "They were both direct perpetrators in committing the petty theft, and then one committed a robbery. So I need -- I still think the conspiracy instructions apply.
>
> "The court: Well, I understand your disagreement with me over conspiracy, and we've addressed that. The question is as it applies to aiding and abetting, whether this instruction [CALCRIM No.] 403 should be given or not, or modified.
>
> "[The prosecutor]: I don't believe that it should be modified.

5

"The court: Either counsel want to weigh in?

"[Watson's counsel]: No, thank you, Your Honor. Submitted.

"[Smith's counsel]: Submitted, Your Honor.

"The court: [CALCRIM No.] 403 is in the aiding and abetting section of the instructions, not the conspiracy instructions. It is a correct statement of the law, but one could read the instruction, not knowing about how chapters in CALCRIM work, and think they have to make this finding before finding the defendants guilty of robbery on a direct liability theory.

"If nobody is concerned about that than me, that's fine. It sounds like I'm standing alone, so I'll leave the instructions as given."

After the recess, the jury returned, and the trial court continued instructing the jury. The trial court instructed the jury concerning the natural and probable consequences doctrine pursuant to CALCRIM No. 403 as follows:

"Before you may decide whether a defendant is guilty of robbery, you must decide whether he is guilty of petty theft. To prove that the defendant is guilty of robbery, the People must prove that:

"One, the defendant is guilty of petty theft;

"Two, during the commission of petty theft, a co-participant in that petty theft committed the crime of robbery;

"And three, under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of robbery was a natural and probable consequence of the commission of the petty theft.

6

"A co-participant in a crime is a perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander.

"A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

"To decide whether the crime of robbery was committed, please refer to the separate instructions that I have given you on that crime."

Shortly thereafter, the trial court instructed the jury pursuant to CALCRIM Nos. 1600 and 1800 on the elements of robbery and petty theft, respectively.

### b. *The prosecutor's closing argument*

#### i. *The prosecutor's argument as to the GameStop robbery charged in count 1*

After the court completed its jury instructions, the prosecutor gave her closing argument. While discussing the incident at the GameStop store, the prosecutor argued that Watson was guilty of robbery as a direct perpetrator. The prosecutor argued that Watson "grabbed [the victim's] wrist[;] that's force right there." The prosecutor further argued that Watson "us[ed] force to resist [the victim's] efforts." After arguing that Watson was guilty of the robbery of GameStop as a direct perpetrator, the prosecutor argued that Smith was guilty of that robbery as an aider and abettor pursuant to the natural and probable consequences doctrine, as follows:

"What about Mr. Smith? Now, you may be saying to yourself, well, yes, Mr. Smith was there. He committed a theft. He was there at the register, but he's not the one that pinned [the victim's] hand. He's not the one that

7

struggled. Why is he guilty of a robbery? I submit to you that Mr. Smith is guilty of a robbery under the natural and probable consequences theory. This is an offshoot of the aiding and abetting theory that we already talked about.

"To find Mr. Smith guilty under [a] natural and probable consequences theor[y], you need to find the following: That Mr. Smith committed petty theft. He's guilty of that. That during the commission of that petty theft, Mr. Watson, his co-participant in the theft, committed a robbery. And that under all of the circumstances, a reasonable person in Smith's position would have known that the commission of a robbery was a natural and probable consequence of the commission of the petty theft. And what that really means is, was it reasonably foreseeable considering all of the circumstances?

"So -- and this is not, you know, we're not talking about Smith himself, we're talking about you. We're talking about objective, reasonable people. Objectively, would a reasonable person doing what Smith was doing in all of those circumstances know, was it reasonably foreseeable that there may be some force that had to be used in order to either get that property or to resist the efforts of the victim? Absolutely. Again, this is a series of crimes. They committed all these crimes together.

"By the time they committed the GameStop crime, they already committed the Yum Yum Yo crime two weeks earlier and another incident as well, the AM/PM crime was before that as well. But the Yum Yum Yo incident itself. That's one where force was used by both of them. They were both pushing, the victim was trying to close the cash register. You know, absolutely he would have known, a reasonable person would have known that, again, you're not in a situation where you're stealing something off of a shelf when no one is looking and walking out of the store.

"You are making a plan to confront the cashier, with his hands standing at the register. You're making a plan to go into that person's personal space, aggressively reaching

8

over the counter, overcoming their will to resist and getting that money.

"Now, you may not intend to hurt them, to use any force at all. You may hope that it all goes well, we don't even have to touch these people or that they don't touch us. But you go in there knowing, it is reasonably foreseeable that when you reach into someone's personal space and grab the money that belongs to them, there may be some use of force. You may have to push that person out of the way. You may have to struggle with them if they resist. You may have to pull that drawer open if they try to push it close[d]. *So under the natural and probable consequences theory, you can find both of the defendants guilty of robbery*."

"So again, as to Mr. Smith, just a reminder, because these instructions are a little confusing. Under the verdict, Count 1, robbery, you fill in guilty. Leave the other one blank. That Count 1 [lesser included offense], don't touch it." (Italics added.)

> ii. *The prosecutor's argument as to the Yum Yum Yo robbery charged in count 2*

Immediately after presenting her argument as to the GameStop robbery charged in count 1, the prosecutor argued that Smith and Watson were guilty of the Yum Yum Yo robbery charged in count 2 because both defendants used force and fear during that incident. The prosecutor argued in part:

"Count 2, Yum Yum Yo. Again, the question is, is this a robbery? A reminder of what I already explained to you about use of force. The use of force, either to take the money or to resist the victim's efforts to retrieve the property or to facilitate the escape both would make this a robbery.

9

"The amount of force doesn't matter. We're not talking about an assault here, we're talking about an amount of force that's enough to overcome the victim's resist[a]nce. Now, in this particular incident, I'm submitting to you that both, there was the use of force and there was the use of fear. You only need one, use of force or fear, to support a robbery conviction, but in this case we actually have both."

The prosecutor continued by arguing that Smith and Watson both used force and fear to commit count 2. For example, with respect to the use of force, the prosecutor argued:

"[T]hey used force to push against the drawer and keep it open. [The victim] didn't close that drawer and then they said, oh, [the victim] resisted, let's leave. They resisted her efforts. When [the victim] tried to close the drawer, they tried to keep it open. They used the weight of their bodies, their force to get that money, despite the fact that [the victim's] resisting. And there was a struggle over the drawer. [The victim] said she felt the force of the drawer being pushed back at her. [The victim] said she tried to close it a second time, unsuccessfully.

"They struggled over the drawer, going back and forth. And you can see that in the video clearly. Again, it is a very short video. This all happened very fast, but you can see there is a struggle, there's a use of force. [The victim is] trying to resist. [The victim is] trying to keep her money that belongs to her, and they are resisting her. And there's force going back and forth with the drawer."

The prosecutor further argued, "[t]hey also used fear in this incident." The prosecutor argued in part:

"Both of them reach over at the same time, into her personal space, aggressively, right in front of her face. Those are the circumstances. And again, you may infer fear from the circumstances. This is not taking a piece of property off of a shelf and walking out with it. This isn't even just taking the money in the register while the clerk is

10

preoccupied, and doesn't even know it is happening.  This is, she is standing there face-to-face, and these two gentlemen, both a lot bigger and a lot taller and a lot stronger than she is, reaching into her space and taking things from her.  This is a robbery."

2. *Governing law*

a. *The natural and probable consequences doctrine*

"Aider-abettor liability exists when a person who does not directly commit a crime assists the direct perpetrator by aid or encouragement, with knowledge of the perpetrator's criminal intent and with the intent to help him carry out the offense." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 407.)  "Under the natural and probable consequences doctrine, an aider and abettor is guilty of not only the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the actual perpetrator.  The defendant's knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator." (*Id.* at pp. 407–408.)

b. *Prosecutorial error*

"[I]t is improper for [a] prosecutor to misstate the law." (*People v. Marshall* (1996) 13 Cal.4th 799, 831 (*Marshall*).)  "A defendant asserting prosecutorial misconduct must further establish a reasonable likelihood the jury construed the remarks in an objectionable fashion." (*People v. Duff* (2014) 58 Cal.4th 527, 568 (*Duff*).)

### c. *The law governing error in jury instructions*

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) In that context, we must then "determine whether it is reasonably likely the jurors understood the instruction[s] as [defendant] suggests. [Citation.] In making that determination, we must consider several factors including the language of the instruction in question [citation], the record of the trial [citation], and the arguments of counsel." (*People v. Nem* (2003) 114 Cal.App.4th 160, 165.)

### 3. *Application*

In his brief, Smith quotes a portion of the prosecutor's closing argument pertaining to the *GameStop robbery charged in count 1* that ends with the line, "So under the natural and probable consequences theory, you can find both of the defendants guilty of robbery."[7] Smith argues, "*As to count two . . .* the prosecutor argued to the jury that by finding petty theft occurred, it could, as a natural and probable consequence, find both defendants guilty of robbery." (Italics added.) We are unpersuaded.

The prosecutor's statement on which Smith bases his claim pertained to *count 1,* the GameStop robbery, not *count 2*, the Yum Yum Yo robbery. (See pt. III.A.1.b.i.) As to the Yum Yum Yo robbery, the prosecutor argued that *both* Smith and Watson were guilty of the robbery as direct perpetrators; the prosecutor *never* argued that either defendant was guilty of count 2 as an aider and abettor pursuant to the natural and probable consequences

---

7    The relevant portions of the prosecutor's argument are quoted in part III.A.1.b.i, *ante*.

doctrine. (See pt. III.A.1.b.ii, *ante*.) Thus, Smith's claim that the prosecutor's closing argument, when combined with the court's natural and probable consequences jury instruction (CALCRIM No. 403), erroneously permitted the jury to find him guilty of *count 2* pursuant to an invalid application of the natural and probable consequences doctrine, is entirely without merit.

Even if Smith's argument is applied to count 1, the GameStop robbery, his prosecutorial error argument fails because, when the prosecutor's argument is considered in full, it is clear that the prosecutor was arguing that Watson was guilty of the GameStop robbery as a direct perpetrator, and that Smith was guilty of the GameStop robbery as an aider and abettor pursuant to the natural and probable consequences doctrine. Stated differently, there is no "reasonable likelihood" that the jury construed the prosecutor to be arguing that *both* defendants were guilty of the GameStop robbery as aider and abettors pursuant to the natural and probable consequences theory. (*Duff, supra*, 58 Cal.4th at p. 568.)

In addition, the prosecutor *never* stated that either defendant could be found guilty of a robbery without at least one of the coparticipants having committed a robbery, and the other elements of the natural and probable consequences doctrine being met. On the contrary, in arguing Smith's guilt pursuant to the natural and probable consequences doctrine for the GameStop robbery, the prosecutor echoed CALCRIM No. 403, and told the jury that it was required to find that "during the commission of that petty theft, Mr. Watson, his co-participant in the theft, committed a robbery." In short, the prosecutor did not commit prosecutorial error by "misstat[ing] the law." (*Marshall, supra*, 13 Cal.4th at p. 831.)

13

With respect to Smith's jury instruction claim,[8] even if that argument is applied to count 1, CALCRIM No. 403 is a correct statement of the law, and Smith does not identify any infirmity in the instruction. While the trial court expressed its concern that the jury might think that it had to find that the elements of CALCRIM No. 403 were met before finding the defendants guilty under a *direct* liability theory,[9] that is an ambiguity that could have only made it more *difficult* for the jury to find the defendants guilty. Thus, any such ambiguity could not possibly have prejudiced either defendant. (See *People v. Lee* (1999) 20 Cal.4th 47, 52 ["Defendant may not complain on appeal about errors favorable to him"].)

The trial court never suggested that it was concerned that the jury might apply CALCRIM No. 403 to find the defendants guilty of robbery *without* finding that one of them committed a robbery, and Smith does not point to any language in the instruction that would permit such a result. On the contrary, the court expressly instructed the jury that in order to find a defendant guilty of robbery pursuant to the natural and probable consequences doctrine, the jury was required to find, among other elements

---

[8]    Smith's jury instruction claim is that the prosecutor's closing argument, when made in connection with CALCRIM No. 403 was "bound to confuse the jury." As explained in the text, the statement from the prosecutor's closing argument on which Smith bases his claim—"under the natural and probable consequences theory, you can find both of the defendants guilty of robbery"—is a statement that the prosecutor made with respect to *count 1*, rather than *count 2*.

[9]    Specifically, as noted in part III.A.1.a, *ante*, after referring to CALCRIM No. 403 outlining the elements of guilt under the natural and probable consequences doctrine, the trial court stated that the jury might think that "they have to make this finding before finding the defendants guilty of robbery on a direct liability theory."

14

that "a co-participant in that petty theft committed the crime of robbery." Thus, Smith's claim that the trial court erred in instructing the jury concerning the natural and probable consequences doctrine is without merit.

Accordingly, we conclude that the prosecutor's closing argument and the trial court's jury instructions did not erroneously allow the jury to find Smith guilty of the Yum Yum Yo robbery—or the GameStop robbery—merely upon a finding that the defendants were guilty of petty theft.

B. *Defense counsel did not provide ineffective assistance in failing to object to the trial court's jury instruction and the prosecutor's argument concerning the natural and probable consequences doctrine*

Smith claims that his counsel provided ineffective assistance in failing to object to the trial court's giving CALCRIM No. 403 and the prosecutor's closing argument pertaining to the natural and probable consequences doctrine.

1. *Governing law*

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient in that it "fell below an objective standard of reasonableness," evaluated "under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688; accord *People v. Ledesma* (1987) 43 Cal.3d 171, 216.) The defendant must also show that it is reasonably probable that a more favorable result would have been reached absent counsel's deficient performance. (*Strickland*, at p. 694.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Thus, "[w]hen the record on direct appeal sheds no light on why counsel failed to act in the manner

15

challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 675 (*Centeno*).)

### 2. *Application*

Our determination in part III.A.3, *ante*, that CALCRIM No. 403 properly states the law, and that any ambiguity in its application to this case could only have favored Smith, makes clear that defense counsel was not ineffective in failing to object to the instruction. Defense counsel could have reasonably determined that it was not in Smith's interest to raise an objection that could have only harmed his client. Thus, Smith cannot establish the lack of any " ' " 'conceivable tactical purpose' " ' " (*Centeno, supra*, 60 Cal.4th at p. 675) for failing to object to the instruction.

In addition, our conclusion that the prosecutor did not commit error during her closing argument defeats Smith's claim of ineffective assistance premised on defense counsel's failure to object to the prosecutor's argument. (See, e.g., *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"].)

Accordingly, we conclude that defense counsel did not provide ineffective assistance in failing to object to the trial court's jury instruction and the prosecutor's argument concerning the natural and probable consequences doctrine.

### C. *The trial court was not required to provide a unanimity jury instruction*

Smith claims that the trial court was required to provide the jury with a unanimity instruction to ensure that "the jury agreed that appellant either committed petty theft but was guilty of robbery as a natural and probable

consequence under CALCRIM No. 403 or committed robbery as a direct perpetrator under CALCRIM No. 1600."[10]

    1. *Governing law*

In *People v. Covarrubias* (2016) 1 Cal.5th 838, 877–878, the California Supreme Court provided an overview of the aspects of a criminal case for which jury unanimity, and a unanimity instruction, are, and *are not*, required:

> "In a criminal case, 'the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.' [Citation.] Yet 'where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, *as the cases often put it, the "theory" whereby the defendant is guilty.*' [Citation.] 'In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction.' [Citation.]" (*Id.* at pp. 877–878, second italics added; see, e.g., *People v. Armstrong* (2019) 6 Cal.5th 735, 794 [" 'the jury need not unanimously agree on the theory under which the defendant is guilty' "].)

---

[10] While Smith appears to raise this argument only as to count 2, even if his argument is applied to count 1, it fails for the reasons stated in this section.

Consistent with the rule that a jury need not unanimously agree as to the *theory* under which a defendant is guilty, jurors need *not* unanimously agree as to whether a defendant is guilty as an aider and abettor or as a direct perpetrator. (See, e.g., *People v. Russo* (2001) 25 Cal.4th 1124, 1133 [citing the "rule that the jury need not agree on whether the defendant was guilty as the direct perpetrator or as an aider and abettor as long as it agreed on a specific crime"]; *People v. Santamaria* (1994) 8 Cal.4th 903, 919 (*Santamaria*).) The *Santamaria* court explained:

> "Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. Sometimes, as probably occurred here, the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other."

The *Santamaria* court offered the following example:

> " ' "Assume a robbery with two masked participants in a store, one as the gunman and one as the lookout. If one witness makes a voice identification of the defendant as the gunman who demanded money, but other evidence, such as a fingerprint, suggests the defendant was actually holding the door open as lookout, the jury would be faced with the same theories presented in this case: find the defendant was the gunman and therefore a direct perpetrator, or find he was at the door and therefore an aider and abettor. Either way he would be guilty of robbery.' If 12 jurors must agree on the role played by the defendant, the defendant may go free, even if the jurors all agree defendant committed the crime. That result is absurd.' [Citation.]" (*Santamaria, supra*, 8 Cal.4th at p. 920.)

18

2. *Application*

Smith contends that the trial court was required to provide a unanimity instruction to the jury for the following reason:

> "Under the court's instructions in this case, the jury could have found appellant guilty of robbery on count two as a direct perpetrator. The jury could also have found appellant guilty of robbery if it found appellant committed petty theft and that a robbery committed by Watson was a natural and probable cause of that theft."

The unanimity that Smith suggests was required is, in fact, *not* required under California law.[11] The California Supreme Court case law discussed above makes clear that the jury was *not* required to unanimously agree whether Smith was guilty of either robbery as a direct perpetrator or as an aider and abettor (pursuant to the natural and probable consequences doctrine). (See, e.g., *Santamaria, supra*, 8 Cal.4th at p. 919.)

Accordingly, we conclude that the trial court was not required to provide the jury with a unanimity instruction.[12]

---

[11] We assume for purposes of this opinion that the jury could find Smith guilty of count 2 pursuant to the natural and probable consequences doctrine if the jury found Watson to be a direct perpetrator of robbery on count 2, even though the prosecutor never argued that Smith was guilty of count 2 under that doctrine.

[12] To the extent that Smith's unanimity argument is premised on the trial court's purported error in instructing the jury pursuant to CALCRIM No. 403 when considered in connection with the prosecutor's closing argument, we reject that argument for the reasons stated in part III.A, *ante*.

19

D.  *The two one-year prison prior enhancements (§ 667.5) must be stricken due to a change in the law and Smith's sentence must be modified*

With respect to his sentence, Smith argues that this court should strike the two one-year prison prior enhancements due to a change in the law. The People concede that Smith is entitled to have the two one-year prison prior enhancements stricken.

1.  *Smith's original sentence*

As noted in part I, *ante*, the trial court imposed a 19-year sentence. On the robbery (§ 211) in count 1, the trial court sentenced Smith to 10 years, consisting of a five-year upper term doubled due to the prior strike. On the robbery (§ 211) in count 2, the trial court sentenced Smith to a consecutive term of two years, consisting of a consecutive one-year term (one-third the midterm) doubled due to the prior strike. The trial court also imposed a consecutive five-year term for a serious felony enhancement, plus two consecutive one-year terms for the two prison prior enhancements. In addition, the trial court sentenced Smith to "time served" on the petty theft (§ 484) in count 4, a misdemeanor.[13]

2.  *Senate Bill 136*

In *People v. Gastelum* (2020) 45 Cal.App.5th 757 (*Gastelum*), this court discussed Senate Bill No. 136 (Senate Bill 136), which amended section 667.5, subdivision (b):

> "Prior to this amendment, [section 667.5, subdivision (b)] provided for a one-year enhancement for each prior separate prison term, unless the defendant remained free from both prison custody and the commission of a new felony for a five-year period after discharge. [Citations.]

---

[13]  The trial court also imposed a sentence of "time served" on count 3. However, as noted in part I, *ante*, the jury found Smith *not* guilty on that count. Accordingly, we strike the court's imposition of sentence on count 3.

After the amendment, 'a one-year prior prison term enhancement will only apply if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).' [Citations.] The amended statute became effective January 1, 2020." (*Gastelum*, at p. 772.)

3. *Application*

The People concede that Senate Bill 136 applies retroactively to Smith and requires that we strike the two one-year prison prior enhancements (§ 667.5). We agree. (See *Gastelum, supra*, 45 Cal.App.5th at p. 772 [applying Senate Bill 136 retroactively to strike a one-year prison prior enhancement].)

Smith argues that, rather than remanding for resentencing, this court should simply "modify the judgment by striking the one-year sentences imposed for the two . . . section 667.5, subdivision (b) enhancements." The People do not request a remand for resentencing, thereby implicitly conceding that they do not oppose Smith's request that we modify the judgment by striking the one-year sentences imposed for the two section 667.5, subdivision (b) enhancements.

Accordingly, we strike the two one-year prison prior enhancements (§ 667.5), and modify the judgment to reflect an aggregate sentence of 17 years in prison.

IV.

DISPOSITION

The convictions are affirmed. The court's imposition of sentence on count 3 and the two one-year prison prior enhancements (§ 667.5) are stricken. The judgment is modified to reflect an aggregate sentence of 17 years in prison. The matter is remanded to the trial court with directions to prepare an abstract of judgment reflecting the modification of Smith's

judgment in accordance with this opinion.  The trial court is directed to forward a certified copy of the new abstract of judgment to the Department of Corrections and Rehabilitation.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

GUERRERO, J.